IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KIMBERLEE KNOX and KAYLA BRATCHER on behalf of themselves and all other persons similarly situated, known and unknown, | )<br>)<br>) |
| Plaintiffs, | ) Case No.<br>)<br>) Judge<br>) |
| v. | ) Magistrate Judge<br>) |
| THE JONES GROUP and AVON WINGS, LLC d/b/a Buffalo Wild Wings | ) JURY DEMANDED<br>) |
| Defendants. | ) **1:15-cv-1738 SEB-TAB**<br>) |

## COMPLAINT

Plaintiffs Kimberlee Knox (f/k/a Lantz and Rice) and Kayla Bratcher ("Plaintiffs"), on behalf of themselves and all other persons similarly situated, known and unknown, through their attorneys, and for their Complaint against Defendants The Jones Group and Avon Wings, LLC ("Avon Wings") d/b/a Buffalo Wild Wings (collectively, "Defendants"), state as follows:

**NATURE OF PLAINTIFFS' CLAIMS**

1. This lawsuit arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, for Defendants' failure to pay Plaintiffs and other similarly-situated, tipped employees all earned minimum wages.

2. Through its subsidiary or affiliated companies, including Avon Wings, The Jones Group owns and operates 34 franchised Buffalo Wild Wings restaurants, including locations in Indiana, Illinois, Ohio, Michigan, Virginia, North Carolina, and Alaska. *See* http://www.bwjonesgrp.com/careers.html (visited October 29, 2015) (listing all locations by city).

1

3. Along with its subsidiary or affiliated companies, including Avon Wings, The Jones Group has a policy and practice of paying certain employees, including servers and bartenders, sub-minimum hourly wages under the tip-credit provisions of the FLSA ("Tip-Credit Employees").

4. Under the tip-credit provisions of the FLSA, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum hourly wage and take a "tip credit" against its minimum wage obligations. But an employer is not permitted to take a tip credit against its minimum wage obligations in any of the following circumstances: (1) when it requires its tipped employees to return a portion of their tips to the employer; (2) when it requires its tipped employees to perform non-tipped work that is ***unrelated*** to the employees' tipped occupation (*i.e.* "dual jobs"); or (3) when it requires its tipped employees to perform non-tipped work that, although ***related*** to the employees' tipped occupation, exceeds 20 percent of the employees' time worked during a workweek. *See, e.g., Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (Posner, J.) (explaining that when tipped employees perform "non-tipped duties" that "are ***unrelated*** to their tipped duties . . . such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work") (emphasis added); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing ***related*** but nontipped duties should be paid at the full minimum wage for that time"), *Bernal v. Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (defendant not permitted to take the FLSA tip credit when it took plaintiffs' tips to pay for shortages and unpaid tabs).

5. Along with its subsidiary or affiliated companies, including Avon Wings, The Jones Group has a policy and practice of paying its Tip-Credit Employees sub-minimum, tip-credit wages

even though it requires them to pay The Jones Group or its subsidiary or affiliated companies, including Avon Wings, from their tips for customer walkouts and cash drawer shortages.

6. Along with its subsidiary or affiliated companies, including Avon Wings, The Jones Group's policy and practice of requiring Tip-Credit Employees to pay The Jones Group or its subsidiary or affiliated companies, including Avon Wings, from their tips for customer walkouts and cash drawer shortages while paying them sub-minimum, tip-credit wages violates the FLSA.

7. Along with its subsidiary or affiliated companies, including Avon Wings, The Jones Group also has a policy and practice of paying its Tip-Credit Employees sub-minimum, tip-credit wages even when it requires those employees to perform non-tipped work that is *unrelated* to their tipped occupation (*i.e.* "dual jobs"), such as: sweeping, mopping, vacuuming, and deck brushing restaurant floors; washing glasses, cups, platters, or silverware; slicing fruit; portioning dressings; cleaning the restaurant; and rolling silverware.

8. Even where the non-tipped work The Jones Group, along with its subsidiary or affiliated companies, including Avon Wings, requires its Tip-Credit Employees to perform were *related* to the employees' tipped occupation, The Jones Group and its subsidiary or affiliated companies, including Avon Wings, has a policy and practice of requiring Tip-Credit Employees to perform this non-tipped work for more than 20 percent of their time worked each workweek.

9. Along with its subsidiary or affiliated companies, including Avon Wings, The Jones Group's policy and practice of requiring its Tip-Credit Employees to perform non-tipped work while paying them sub-minimum, tip-credit wages violates the FLSA.

**JURISDICTION AND VENUE**

10. This Court has federal question jurisdiction over Plaintiffs' FLSA claims, which arise under 29 U.S.C. § 216(b), pursuant to 28 U.S.C. § 1331.

11. Venue is proper in this judicial district because the facts and events giving rise to Plaintiffs' claims occurred in this judicial district. 28 U.S.C. § 1391.

**THE PARTIES**

12. The Jones Group is an Indiana partnership. On information and belief, the partnership is composed of Mike Jones, Brandon Jones, Mark Jones, and Kevin O'Laughlin.

13. On its website, The Jones Group provides links for applicants to apply for employment at each of its Buffalo Wild Wings restaurants and announces: "[w]e are pleased to welcome your application to The Jones Group, an independently owned franchise of one of the fastest growing restaurant chains in the nation." *See* http://www.bwjonesgrp.com/careers.html (visited October 29, 2015).

14. Avon Wings is an Indiana corporation.

15. Avon Wings' principal place of business is located at 1475 W. Scott Court, Laporte, Indiana 46350.

16. Plaintiff Knox now resides in and is domiciled in Maricopa County, Arizona.

17. Defendants employed Plaintiff Knox as a server and bartender at their Buffalo Wild Wings restaurant in Avon, Indiana, from approximately February or March 2009 to December 2013.

18. With the exception of her approximately one-week initial training periods, Defendants always paid Plaintiff Knox for straight-time hours (i.e., 40 or fewer hours each week) at a sub-

minimum, tip-credit wage of $2.13 per hour to work as a server and bartender at Defendants' Buffalo Wild Wings restaurant.[1] *See* Ex. A, representative earnings statements for Plaintiff Knox.

19. While paying her at the sub-minimum, tip-credit wage to work as a server, Defendants required Plaintiff Knox to reimburse them from her tips when customers walked out of the restaurant without paying for their meals.

20. While paying her at the sub-minimum, tip-credit wage to work as a bartender, Defendants required Plaintiff Knox to reimburse them from her tips when her bar cash drawer had a cash shortage.

21. While paying her at the sub-minimum, tip-credit wage, Defendants required Plaintiff Knox to spend over 20 percent of her work time in individual workweeks as a server or bartender performing work that had no customer interaction and that did not generate tips (non-tipped work). Plaintiff Knox typically spent approximately 50 percent of her work time as a server and 35-40 percent as a bartender performing such duties.

22. When Plaintiff Knox worked morning shifts as a server, she was required to arrive at the restaurant approximately one (1) hour before it opened and perform opening duties, such as: taking chairs down from tables and placing them at the table; making two urns of tea (one sweet and one unsweet), which required inserting a filter into the ice tea maker, putting tea grounds in the filter, and adding sugar for the sweet tea; filling buckets with ice in the back of the house and carrying them to the front of the house to empty into the ice bins; filling five or six "sani" buckets with water and sanitizer or soap in the back of the house and placing them with towels at different stations in the front of the house; screwing the nozzles into the soda machine (the nozzles were soaking in soda or

---

[1] When Plaintiff Knox worked over forty (40) hours in one work week as a server or bartender,

lemon water from the night before); and portioning Ranch and Blue Cheese dressings from large bags into small ramekins in the kitchen, which required filling individual plastic ramekins with dressing, placing lids on the ramekins, and placing filled ramekins in a plastic tub.[2] Servers regularly spent at least one hour during their morning shifts portioning Ranch and Blue Cheese dressings in the kitchen.

23. At the end of her morning serving shifts, Plaintiff Knox was required to perform "outs," such as: filling buckets with ice in the back of the house and carrying them to the front of the house to restock the ice bins; rolling silverware, which involved placing a knife and fork in a paper napkin, rolling the utensils in the napkin, and placing an adhesive tab on the end of the napkin to keep it from unrolling;[3] washing food platters in the back of the house and putting the clean platters away; restocking table caddies with salt and pepper, ketchup, and wet napkins; sweeping the floor; performing any unfinished portioning of Ranch and Blue Cheese dressings in the kitchen; cleaning the trash cans; and sifting through trash in the back of the restaurant to identify any silverware that may have been thrown away during the shift.

24. When Plaintiff Knox worked evening serving shifts as a server and closed the restaurant, she was required to perform closing duties, such as: wiping down tables and table caddies and situating the table caddies in their correct locations on the tables; removing nozzles from a soda machine and placing them to soak in soda water or lemon water; placing chairs on top of tables; sweeping and vacuuming the entire dining room, if she was assigned to the dining room; sweeping and mopping the floor in the bar area (and, two days per week, deck scrubbing the same area with a

---

Defendants also took a tip credit against her overtime wages.
[2] A list posted in the kitchen specified how many tubs a server was required to fill.
[3] Servers were typically required to roll silverware in the back of the house.

long-handled brush), if she was working in the bar area; dumping iced tea and scrubbing the tea urns with a green "scrubbie" and rinsing them; washing any remaining food platters or bowls in the kitchen and putting them away; washing any remaining silverware, which involved carrying dirty silverware to the kitchen, rinsing the silverware with a handheld sprayer, and carrying the silverware to the bar so it could be run through the bar dishwasher; rolling clean silverware; removing trash bags from the trash cans and carrying them to an area in the back of the restaurant; cleaning trash cans; and sifting through trash in the back of the restaurant to identify any silverware that may have been thrown away and then taking the trash bags to the dumpster.

25. During serving shifts, Plaintiff Knox was required to perform additional non-tipped work in between serving customers, such as: washing dirty silverware and platters; rolling silverware, brewing additional iced tea, emptying and refilling "sani" buckets; and taking full garbage bags to the back of the restaurant.

26. Also as a server, Plaintiff Knox was required to perform cleaning duties based on the shift and the day of the week, such as: dusting restaurant ledges with a wet cloth; cleaning the windows in the restaurant's party room; pulling out booths, sweeping and vacuuming underneath them, washing the walls behind them, and pulling out the cushions of the booths and cleaning underneath them; cleaning the drain under the soda machine, which required getting on her hands and knees and using bleach; cleaning the soda machine, which required melting the ice in the ice bin, cleaning the ice bin, and wiping down the front and back of the soda machine; emptying table caddies and running them through the dishwasher; cleaning table and chair legs; wiping down the wall separating the dining room from the bar area; scraping gum off of tables or chairs; or dusting televisions.

27. When Plaintiff Knox worked morning shifts as a bartender, she was required to arrive at the restaurant one (1) hour before it opened to perform "opening" duties, such as: slicing lemons, limes, and oranges for use in the whole restaurant; removing caps from the beer taps; pulling tabs on the beer kegs to release air pressure; removing chairs from tables and placing them underneath; filling buckets with ice in the back of the house and emptying them in the bar ice bin; and filling the bar sinks with water and cleaning solution.

28. At the end of her morning bartending shifts, Plaintiff Knox was required to perform "outs," such as: washing any remaining glassware in the dishwasher; restocking beer; wiping down the bar and tables in the bar area; restocking table caddies with salt and pepper, ketchup, or wet napkins; and deck brushing and mopping the keg cooler behind the bar.

29. When Plaintiff Knox worked evening shifts as a bartender, she was required to perform "closing" duties, such as: putting caps on the beer nozzles; running bar mats through the dishwasher; running the fruit tray through the dishwasher; washing bar spoons; washing the blender; cleaning the drains under the beer taps; wiping down the bar; placing chairs on top of tables; mopping and deck scrubbing the floor behind the bar; running any remaining glasses through the dishwasher; cleaning the dishwasher by removing any straws, seeds, or debris from the dishwasher; and cleaning debris out of the bar sinks.

30. In between serving customers as a bartender, Plaintiff Knox was required to wash all of the glasses for the entire restaurant and run silverware through the dishwasher, which required running it through once on a flat rack, sorting it by utensil into a partitioned rack, and running it through the dishwasher again.

31. Also as a bartender, Plaintiff Knox was required to perform cleaning duties based on the shift and day of the week, such as: getting on her hands and knees and cleaning drains; melting the ice in the bar ice bin with hot water and wiping down the ice bin; wiping down the walls of the cooler with a rag; wiping down all of the liquor bottles; wiping down the shelves where the liquor bottles rest; cleaning the seals on the coolers; cleaning the glass chillers, which required removing all of the glasses from the chiller (and at times included removing broken shards of glass with a shop vacuum) and wiping out the chiller; or polishing martini and margarita glasses with a polishing rag.

32. Plaintiff Bratcher resides in and is domiciled in Hendricks County, Indiana.

33. Defendants employed Plaintiff Bratcher at their Buffalo Wild Wings restaurant in Avon, Indiana, from approximately September 2011 to April 2014. For approximately the first six months of her employment, she worked as a cashier. From approximately March of 2012 to April 2014 she worked as a server, and from approximately September 2013 to September 2014 she also worked as a bartender.

34. With the exception of her approximately one-week training period, Defendants always paid Plaintiff Bratcher for straight-time hours (i.e., 40 or fewer hours each week) at $2.13 per hour to work as a server and bartender.[4]

35. While paying her at the sub-minimum, tip-credit wage to work as a server, Defendants required Plaintiff Bratcher to reimburse them from her tips when customers walked out of the restaurant without paying for their meals.

---

[4] When Plaintiff Bratcher worked over forty (40) hours in one work week as a server or bartender, Defendants also took a tip credit against her overtime wages.

36. While paying her at the sub-minimum, tip-credit wage to work as a bartender, Defendants required Plaintiff Bratcher to reimburse them from her tips when her bar cash drawer had a cash shortage.

37. While paying her at the sub-minimum, tip-credit wage, Defendants required Plaintiff Bratcher to spend over 20 percent of her time during serving and bartending shifts performing work that had no customer interaction and that did not generate tips (non-tipped work). Plaintiff Bratcher typically spent at least 50 percent of her work time as a server and 40 percent as a bartender performing such duties.

38. Plaintiff Bratcher worked morning shifts as a server at Buffalo Wild Wings. She was required to arrive at the restaurant approximately one (1) hour before it opened and perform opening duties, such as: taking chairs down from tables and placing them underneath; filling buckets with ice in the back of the house and carrying them to the front of the house to empty in the ice bins; filling "sani" buckets in the kitchen with water and sanitizer or soap and placing them with towels at different stations in the front of the house; making two urns of tea (one sweet and one unsweet), which required inserting a filter into the ice tea maker, putting tea grounds in the filter, and adding sugar for the sweet tea; screwing the nozzles into the soda machine; and portioning Ranch and Blue Cheese dressings from large bags into small ramekins in the kitchen, which required filling individual plastic ramekins with dressing, placing lids on the ramekins, and placing filled ramekins in plastic tubs. Servers regularly spent at least one hour during their morning shifts portioning Ranch and Blue Cheese dressings in the kitchen.

39. At the end of her morning serving shifts, Plaintiff Bratcher was required to perform "outs," such as: rolling silverware, which involved placing a knife and fork in a paper napkin, rolling

the utensils in the napkin, and placing an adhesive tab on the end of the napkin to keep it from unrolling;[5] filling buckets with ice in the back of the house and carrying them to the front of the house to restock the ice bins; washing food platters in the back of the house and putting the clean platters away; restocking table caddies with salt and pepper, ketchup, and wet napkins; sweeping the floor; performing any unfinished portioning of Ranch and Blue Cheese dressings in the kitchen; carrying full trash bags from the front of the house to the back of the restaurant; cleaning trash cans; and sifting through trash in the back of the restaurant to identify any silverware that may have been thrown away during the shift.

40. During her employment, Plaintiff Bratcher worked evening serving shifts at Buffalo Wild Wings. When she worked evening shifts as a closer, she was required to perform closing duties, such as: wiping down tables and table caddies and situating the table caddies in their correct locations on the tables; removing nozzles from a soda machine and placing them in soda water; and placing chairs on top of tables; sweeping and vacuuming the entire dining room, if she was assigned to the dining room; sweeping and mopping the floor in the bar area (and, two days per week, deck scrubbing the same area with a long-handled brush), if she was working in the bar area; emptying the iced tea urns and scrubbing them with a green "scrubbie" and rinsing them out; taking out the garbage; cleaning the garbage cans; washing any remaining silverware, which involved carrying dirty silverware to the kitchen, rinsing the silverware with a handheld sprayer, carrying the silverware to the bar so it could be run through the bar dishwasher; rolling clean silverware; carrying trash bags from the front of the house to an area in the back of the restaurant; cleaning trash cans; sifting

---

[5] Servers were typically required to roll silverware in the back of the house.

through trash in the back of the restaurant to identify any silverware that had been thrown away and then taking trash to the dumpster.

41. During serving shifts, Plaintiff Bratcher was required to perform duties in addition to serving customers, such as: washing dirty silverware and platters; rolling silverware, brewing additional iced tea, emptying and refilling "sani" buckets; and taking full garbage bags to the back of the restaurant.

42. Also as a server, Plaintiff Bratcher was required to perform cleaning duties each shift, such as: dusting restaurant ledges with a wet cloth; cleaning windows in the party room; pulling out booths, sweeping and vacuuming underneath them, washing the walls behind them, and pulling out the cushions of the booths and cleaning underneath them; cleaning the drain under the soda machine, which required getting on her hands and knees and using bleach; cleaning the soda machine, which required melting the ice in the ice bin, cleaning the ice bin, and wiping down the front and back of the soda machine; emptying table caddies and running them through the dishwasher; cleaning table and chair legs; wiping down the wall separating the dining room from the bar area; scraping gum off of tables or chairs; dusting light fixtures, which required climbing on a ladder and using a long-handled duster; or dusting televisions.

43. When Plaintiff Bratcher worked as a bartender, she worked morning shifts and was required to arrive at the restaurant one (1) hour before it opened to perform "opening" duties, such as: slicing lemons, limes, and oranges for use in the entire restaurant; removing caps from the beer taps; pulling tabs on the beer kegs to release the air pressure; filling buckets with ice in the back of the house and emptying them in the bar ice bin; and removing chairs from tales and placing them underneath.

44. At the end of her morning bartending shifts, Plaintiff Bratcher was required to perform "outs," such as: washing any remaining glassware in the dishwasher; wiping down the bar and tables in the bar area; restocking table caddies with salt and pepper, ketchup, or wet napkins; restocking beer; and deck brushing and mopping the keg cooler behind the bar.

45. When Plaintiff Bratcher worked as a bartender, she worked evening shifts and was required to perform "closing" duties, such as: running floor mats through the dishwasher; washing bar spoons; washing the blender; cleaning the drains under the beer taps; wiping down the bar; placing chairs on top of tables; mopping and deck scrubbing behind the bar; taking out the garbage and cleaning the garbage cans; rolling silverware; running any remaining glasses through the dishwasher; and deck brushing and mopping the keg cooler behind the bar.

46. In between serving customers as a bartender, Plaintiff Bratcher was required to wash all of the glasses for the entire restaurant.

47. Also as a bartender, Plaintiff Bratcher was required to perform cleaning duties each shift, such as: getting on her hands and knees and cleaning drains; dusting the coolers; wiping down all of the liquor bottles; dusting the shelves where the liquor bottles rest; cleaning the seals on the coolers; or cleaning the glass chillers, which required removing all of the glasses from the chiller (and may include removing broken shards of glass) and wiping out the chiller; or sweeping and mopping the keg cooler.

**COMMON FACTUAL ALLEGATIONS**

48. Buffalo Wild Wings restaurants, including those owned and operated by Defendants, operate as a chain concept, so that customers can obtain essentially the same food and drink items and experience the same customer service at all Buffalo Wild Wings restaurants.

49. Along with its subsidiary or affiliated companies, including Avon Wings, The Jones Group trains its Buffalo Wild Wings employees, including Tip-Credit Employees and store managers, to perform the same, or essentially the same, job duties regardless of the location where they are assigned to work.

50. During Plaintiffs' employment with Defendants, new managers trained at Defendants' Avon, Indiana, location and were then assigned to work at other Buffalo Wild Wings locations owned and operated by The Jones Group.

51. During Plaintiffs' employment with Defendants, at least one Tip-Credit Employee transferred from The Jones Group's Danville, Illinois Buffalo Wild Wings location to its Avon, Indiana location and that Tip-Credit Employee performed the same non-tipped work that Plaintiffs performed without requiring any additional training.

52. Along with its subsidiary or affiliated companies, including Avon Wings, The Jones Group requires its Tip-Credit Employees to perform non-tipped work each shift in addition to serving customers.

53. During Plaintiffs' employment at the Avon, Indiana Buffalo Wild Wings, the restaurant maintained laminated checklists for servers and bartenders that listed many of the non-tipped duties servers and bartenders were required to perform. The checklists covered opening duties, "outs," closing duties, and cleaning duties for servers and bartenders.

54. During Plaintiffs' employment at the Avon, Indiana Buffalo Wild Wings, managers verified that servers and bartenders performed the non-tipped work covered in the checklists described in the previous paragraph.

55. When Tip-Credit Employees perform non-tipped work, they do not interact with customers and do not have the opportunity to earn tips.

56. Along with its subsidiary or affiliated companies, including Avon Wings, The Jones Group requires its Tip-Credit Employees to perform non-tipped work before its restaurants are open to customers.

57. Along with its subsidiary or affiliated companies, including Avon Wings, The Jones Group requires its Tip-Credit Employees to perform non-tipped work after they are finished serving customers and/or after its restaurants are closed to customers.

58. Neither The Jones Group nor its subsidiary or affiliated companies, including Avon Wings, have any policies prohibiting Tip-Credit Employees from performing certain types, or excessive amounts, of non-tipped work.

59. Neither The Jones Group nor its subsidiary or affiliated companies, including Avon Wings, track the amount of time Tip-Credit Employees spend performing non-tipped work.

60. Along with its subsidiary or affiliated companies, including Avon Wings, The Jones Group uses a standard point-of-sale system in all of its Buffalo Wild Wings restaurants.

61. Along with its subsidiary or affiliated companies, including Avon Wings, The Jones Group analyzes and evaluates information collected by its point-of-sale system, including labor cost information for each of its restaurants.

62. In their point-of-sale system, Defendants can create different "clock in" codes that would allow its Tip-Credit Employees to clock in at the full minimum wage rate when performing non-tipped work, while clocking in at a sub-minimum, tip-credit wage rate when serving customers.

63. Defendants did not allow their Tip-Credit Employees to clock in at the full minimum wage rate when performing the non-tipped work described in this Complaint, although Defendants had the capacity to do so.

## COUNT I
### Violation of the Fair Labor Standards Act – Minimum Wages
### Collective Action

64. Plaintiffs reallege and incorporate the previous paragraphs of this Complaint as if fully set forth in this Count I.

65. This Count I arises from Defendants' violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, for their failure to pay minimum wages to Plaintiffs and similarly situated Tip-Credit Employees.

66. Plaintiffs bring this Count I as a collective action under Section 16(b) of the FLSA.

67. Plaintiffs' consent forms to act as representative plaintiffs are attached hereto as Ex. B.

68. During the entire course of Plaintiffs' employment at the Avon, Indiana, Buffalo Wild Wings, The Jones Group was Plaintiffs' "employer" as defined by the FLSA. 29 U.S.C. § 203(d).

69. During the entire course of Plaintiffs' employment at the Avon, Indiana, Buffalo Wild Wings, Avon Wings was Plaintiffs' "employer" as defined by the FLSA. 29 U.S.C. § 203(d).

70. During the entire course of Plaintiffs' employment at the Avon, Indiana, Buffalo Wild Wings, Plaintiffs were The Jones Group's "employee[s]" as defined by the FLSA. 29 U.S.C. § 203(e)(1).

71. During the entire course of Plaintiffs' employment at the Avon, Indiana, Buffalo Wild Wings, Plaintiffs were Avon Wings' "employee[s]" as defined by the FLSA. 29 U.S.C. § 203(e)(1).

72. During the entire course of Plaintiffs' employment at the Avon, Indiana, Buffalo Wild Wings, Plaintiffs were not exempt from the minimum wage provisions of the FLSA.

73. The Jones Group is an "enterprise" as defined by Section 3(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1).

74. Avon Wings is an "enterprise" as defined by Section 3(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1).

75. The Jones Group is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1)(A) of the FLSA. 29 U.S.C. § 203(s)(1)(A).

76. Avon Wings is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1)(A) of the FLSA. 29 U.S.C. § 203(s)(1)(A).

77. The Jones Group's annual gross volume of sales made or business done has exceeded $500,000 in each of the last three calendar years.

78. Avon Wings' annual gross volume of sales made or business done has exceeded $500,000 in each of the last three calendar years.

79. The Jones Group and its subsidiary or affiliated companies, including Avon Wings, are engaged in related activities performed for a common business purpose, through unified operation or common control.

80. The Jones Group violated the FLSA by requiring Plaintiffs to reimburse The Jones Group or Avon Wings from their tips for customer walkouts and cash drawer shortages while paying them sub-minimum, tip-credit wages.

81.     Avon Wings violated the FLSA by requiring Plaintiffs to reimburse Avon Wings from their tips for customer walkouts and cash drawer shortages while paying them sub-minimum, tip-credit wages.

82.     The Jones Group violated the FLSA by requiring Plaintiffs and similarly-situated Tip-Credit Employees to perform non-tipped work that is *unrelated* to their tipped occupation while paying them less than minimum wage, such as sweeping, mopping, and deck brushing restaurant floors; washing glasses, cups, platters, or silverware; slicing fruit; portioning dressings; cleaning the restaurant; and rolling silverware.

83.     Avon Wings violated the FLSA by requiring Plaintiffs and similarly-situated Tip-Credit Employees to perform non-tipped work that is *unrelated* to their tipped occupation while paying them less than minimum wage, such as sweeping, mopping, and deck brushing restaurant floors; washing glasses, cups, platters, or silverware; slicing fruit; portioning dressings; cleaning the restaurant; and rolling silverware.

84.     The Jones Group also violated the FLSA by requiring Plaintiffs and similarly-situated Tip-Credit Employees to perform non-tipped work for more than twenty (20) percent of their time worked in one or more individual workweeks without paying them full minimum wage.

85.     Avon Wings also violated the FLSA by requiring Plaintiffs and similarly-situated Tip-Credit Employees to perform non-tipped work for more than twenty (20) percent of their time worked in one or more individual workweeks without paying them full minimum wage.

86.     The Jones Group's violations of the FLSA were willful.

87.     Avon Wings' violations of the FLSA were willful.

WHEREFORE, Plaintiffs, on behalf of themselves and similarly-situated Tip-Credit Employees, pray for judgment against Defendants as follows:

A. judgment in the amount of the owed minimum wages for all time worked by Plaintiffs and similarly-situated Tip-Credit Employees;

B. liquidated damages in an amount equal to the amount of unpaid minimum wages;

C. reasonable attorneys' fees and costs incurred in prosecuting this action; and

D. such other and further relief as this Court deems just and proper.

JURY TRIAL DEMANDED.

Dated: November 2, 2015

Respectfully submitted,

*/s/ Jamie G. Sypulski*
One of the Attorneys for Plaintiffs

Douglas M. Werman
Zachary C. Flowerree
Werman Salas P.C.
77 West Washington, Suite 1402
Chicago, Illinois 60602
(312) 419-1008
dwerman@flsalaw.com
zflowerree@flsalaw.com

Jamie G. Sypulski
Law Office Jamie Golden Sypulski
150 North Michigan Avenue, Suite 1000
Chicago, Illinois 60601
(312) 332-6202
jsypulski@sbcglobal.net

Attorneys for Plaintiffs