# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KIMBERLEE KNOX and KAYLA BRATCHER, on behalf of themselves and all other persons similarly situated, known and unknown, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:15-cv-1738-SEB-TAB |
| v. | ) ) | |
| THE JONES GROUP and AVON WINGS, LLC, d/b/a Buffalo Wild Wings, | ) ) ) | |
| Defendants. | ) ) | |

# MEMORANDUM IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

CRAIG W. WILEY
MELISSA K. TAFT
JACKSON LEWIS P.C.
10 West Market Street, Suite 2400
Indianapolis, Indiana 46204
Telephone: (317) 489-6930
Facsimile: (317) 489-6931
E-mail: *Craig.Wiley@jacksonlewis.com*
           *Melissa.Taft@jacksonlewis.com*

PAUL DECAMP (*pro hac vice* motion
    forthcoming)
JACKSON LEWIS P.C.
10701 Parkridge Boulevard, Suite 300
Reston, Virginia 20191
Telephone: (703) 483-8305
Facsimile: (703) 483-8301
E-mail: *DeCampP@jacksonlewis.com*

*Counsel for Defendants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

ARGUMENT .........................................................................................................3

I.     THE LEGAL STANDARD FOR A MOTION TO DISMISS UNDER RULE 12(B)(6) .......................3

II.    THE STATUTORY AND REGULATORY FRAMEWORK FOR PLAINTIFF'S "DUAL JOBS" CLAIMS ...............................................................................................4

      A.    The Statutory Text ..................................................................4

      B.    The Regulations ....................................................................5

III.   THE DOL'S SUB-REGULATORY GUIDANCE .........................................................6

      A.    The 1980 Opinion Letter .........................................................6

      B.    The 1985 Opinion Letter .........................................................7

      C.    The 1988 Revision To The Field Operations Handbook ......................8

      D.    In A 2009 Opinion Letter, The DOL Completely Rewrote Its Approach To The Dual Jobs Issue. ..........................................9

IV.   COURTS HAVE REJECTED PLAINTIFF'S "DUAL JOBS" CLAIMS. ..........................11

V.    THIS COURT SHOULD FOLLOW *PELLON*, *ROBERTS*, AND *SCHAEFER* AND DISMISS PLAINTIFF'S MINIMUM WAGE CLAIMS REGARDING TIME SPENT PERFORMING "NON-TIPPED" DUTIES. ...............................................14

VI.   PLAINTIFFS HAVE FAILED TO ALLEGE SUFFICIENT FACTS TO SUPPORT THEIR ADDITIONAL MINIMUM WAGE CLAIMS. ................................................16

CONCLUSION ...................................................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................3

*Auer v. Robbins*, 519 U.S. 452 (1997) ...................................................................11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................3

*Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012) ...........................11

*Driver v. AppleIllinois, LLC*, 265 F.R.D. 293 (N.D. Ill. 2010)...............................11, 13

*Fast v. Applebee's International, Inc.*, 638 F.3d 872 (8th Cir. 2011)..........................11

*Pellon v. Business Representation International, Inc.*,
    528 F. Supp. 2d 1306 (S.D. Fla. 2007),
    *aff'd,* 291 Fed. Appx. 310 (11th Cir. 2008) .....................................................11

*Roberts v. Apple Sauce, Inc.*, 945 F. Supp. 2d 995 (N.D. Ind. 2013) ...........................13

*Schaefer v. P.F. Chang Bistro*,
    2014 U.S. Dist. LEXIS 10544 (D. Ariz. Aug. 1, 2014)...................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) .................................3

*United States v. Elliot*, 467 F.3d 688 (7th Cir. 2006) ...................................................13

*Weigle v. SPX Corp.*, 729 F.3d 724 (7th Cir. 2013) ...........................................13, 14

STATUTES

Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201-219

    Section 3(m), 29 U.S.C. § 203(m)......................................................................5

    Section 3(t), 29 U.S.C. § 203(t).........................................................................5

    Section 6(a)(2)(C), 29 U.S.C. § 206(a)(2)(C) ....................................................4

Fair Labor Standards Amendments of 1966, Pub. L. No. 89-601, §§ 101(a),
201(a), 80 Stat. 830 (1966) ...............................................................................4

Portal-to-Portal Act of 1947, as amended, Section 6(a), 29 U.S.C. § 255(a) ...............16

**RULES AND REGULATIONS**

Title 29, Code of Federal Regulations

      29 C.F.R. part 531.............................................................................................5

      29 C.F.R. § 531.56(e)...................................................................................5, 14

Federal Rules of Civil Procedure, Rule 12(b)(6) ...........................................................3

**OTHER AGENCY GUIDANCE**

United States Department of Labor, Wage and Hour Division

      FIELD OPERATIONS HANDBOOK § 30d00(3) (Dec. 9, 1988)......................................8-9, 11

      Opinion Letter WH-502, 1980 DOLWH LEXIS 1 (Mar. 28, 1980) ..................................7

      Opinion Letter, 1985 DOLWH LEXIS 9 (Dec. 20, 1985)....................................................8

      Opinion Letter FLSA2009-23, 2009 DOLWH LEXIS 27 (Jan. 16, 2009)........................10

## INTRODUCTION

The Fair Labor Standards Act (the "FLSA") allows an employer to satisfy its minimum wage obligation by, in part, taking a "credit" towards the payment of the minimum wage based on tips the employee receives. An employer who chooses to use the tip credit must pay the employee cash wages of at least $2.13 per hour. The employee's tips then supplement the hourly wages. If a tipped employee does not earn sufficient tips to bring her earnings up to the full minimum wage, the employer must make up the difference.

Plaintiffs are two individuals who each worked as both a server and bartender at a Buffalo Wild Wings restaurant in Avon, Indiana. They allege that Defendants may not take a tip credit for seconds or minutes when they performed so-called "non-tipped" work during their shift. Compl. ¶¶ 7-9, 17, 33. Plaintiffs present that claim as two discrete theories. First, they contend that Defendants violated the FLSA by taking a tip credit for time they spent performing such duties as sweeping, mopping, vacuuming, washing dishes, slicing fruit, portioning dressings, and rolling silverware, which Plaintiffs assert are "unrelated" to their tipped occupation. Compl. ¶¶ 7, 82. Second, Plaintiffs allege that Defendants violated the FLSA by taking a tip credit for time spent performing duties "related" to their tipped occupation, but not actually tip-generating (such as taking a customer's order) because this work made up more than 20% of their time in a workweek. *Id.* ¶ 8, 82. Plaintiffs do not specifically identify "non-tipped" duties that are related to their tipped occupation.

Plaintiffs do *not* allege that they were ever paid less than the minimum wage rate in any workweek between their cash wages and tips. Rather, their alleged minimum wage violation rests on their assertion that Defendants should have paid them the minimum wage rate of $7.25, without taking a tip credit, for all time they spent performing supposedly "non-tipped" duties. Although this type of claim has become increasingly common in recent years and has caused

1

confusion at the U.S. Department of Labor (the "DOL") as well as among the courts, in reality Plaintiffs' claim has no statutory or other proper legal basis and has been rejected by the Eleventh Circuit as well as a recent and well-reasoned ruling from the U.S. District Court for the District of Arizona.

Plaintiffs' claim fails because the FLSA allows a tip credit when an employee is in a tipped *occupation*, regardless of the proportion of supposedly tipped and non-tipped duties the employee undertakes.  There is no dispute that Plaintiffs were in tipped occupations: they were servers and bartenders, and they earned at least $30 per month in tips.  Therefore, Defendants had the statutory right to take a tip credit, and Plaintiffs' claim fails as a matter of law.

Plaintiffs also allege that Defendants violated the FLSA by requiring Plaintiffs to reimburse Defendants from their tips for customer walkouts and cash drawer shortages.  Compl. ¶ 80-81.  Plaintiffs' Complaint fails to provide any meaningful factual specificity regarding these claims.  The Plaintiffs merely allege that they were "required" to reimburse Defendants from their tips when a customer walked out without paying or when a drawer had a shortage.  Compl. ¶¶ 6, 19-20, 35-36, 80-81.  They do not allege that they ever *actually* had their tips deducted for these reasons (as opposed to merely being subjected to a policy), or when and how often these alleged tip deductions occurred.  This claim, therefore, fails to satisfy even the basic standards for notice pleading.

For these reasons, Defendants respectfully submit that this Motion should be granted and the Complaint dismissed.

## ARGUMENT

## I.   THE LEGAL STANDARD FOR A MOTION TO DISMISS UNDER RULE 12(B)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a court may dismiss a claim when the opposing party demonstrates that the claim "fail[s] to state a claim upon which

relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss for failure to state a claim, a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 323 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). This plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Id*. Thus, a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

The first step in this analysis is to identify the elements of the plaintiff's cause of action in light of interpreting case authority. *Iqbal*, 556 U.S. at 675. The next step involves "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. At that point, the inquiry focuses on any remaining factual allegations to "determine whether they plausibly give rise to an entitlement of relief." *Id*. "[A] plaintiff's obligation to provide the ground of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." *Id*. at 557. A complaint that fails to allege a legally cognizable claim or that fails to offer sufficient factual basis to show entitlement to relief "must be dismissed." *Id*. at 570.

## II.   THE STATUTORY AND REGULATORY FRAMEWORK FOR PLAINTIFF'S "DUAL JOBS" CLAIMS

Before 1966, the FLSA did not generally apply to employees in restaurants and hotels. As part of the legislative compromise struck in extending the coverage of the FLSA to these industries for the first time in 1966, Congress enacted a "tip credit" provision, to accommodate in part the long-standing practice in these industries whereby workers received most or even all of their income via customer tips.  *See* Pub. L. No. 89-601, §§ 101(a), 201(a), 80 Stat. 830 (1966).  This tip credit provision allows employers under certain circumstances to receive credit toward a portion of their minimum wage obligation for tips that employees receive.

### A.    The Statutory Text

Under the FLSA covered employees must generally receive wages of at least $7.25 per hour.  *See, e.g.*, 29 U.S.C. § 206(a)(1)(C).  However, the FLSA creates an exception to the minimum wage for tipped employees, stating in pertinent part:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>
> (1) the cash wage paid such employee for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996 [i.e., $2.13 per hour]; and
>
> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under Section 206(a)(1) of this title.

29 U.S.C. § 203(m).  The FLSA also provides that a tipped employee is "any employee *engaged in an occupation* in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t) (emphasis added).

4

B.      **The Regulations**

The DOL's Wage and Hour Division has issued regulations addressing tipped employment.  *See* 29 C.F.R. §§531.50-.60.  The specific regulation driving Plaintiffs' theory for recovery is Section 531.56(e), which states in full:

> Dual jobs.  In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter.  *He is employed in two occupations*, and no tip credit can be taken for his hours of employment in his occupation of maintenance man.  *Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses.  It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group.  Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.*

29 C.F.R. § 531.56(e) (emphases added).

Thus, the regulation acknowledges that, as long as certain conditions not germane to this motion are satisfied (regarding, among other things, notice and who participates in a tip pool), the FLSA allows an employer to pay a tip credit wage of at least $2.13 per hour to its "tipped employees."  Such "tipped employees" are defined as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."

The DOL's regulations add the gloss that where an employee is engaged in two *separate occupations*, one tipped and one not tipped, the employer may take a tip credit only for the tipped occupation.  The examples the DOL uses in the regulation are instructive, as they distinguish between two very different scenarios.  The first scenario is where an employee holds two clearly distinct, non-overlapping roles—such as a hotel maintenance man and a waiter in the hotel restaurant—that would not be scheduled or worked simultaneously.  The second scenario is

where tipped employees in the course of their tipped occupation happen to perform some tasks that are not themselves tip-generating, such as preparing food or washing dishes.   In this scenario, the regulation specifically states that the employee is *not* engaged in a dual job.

Both the statute and the regulations focus not on the employee's duties or tasks at any given time, but instead on the employee's *occupation*.   Or, more specifically, the mix of an employee's duties in a tipped occupation do not affect whether or not the employee is a tipped employee, whereas time spent in a separate, non-tipped occupation (such as that of a maintenance man) is not subject to the FLSA's tip credit.

## III.   THE DOL'S SUB-REGULATORY GUIDANCE

The DOL's interpretations of its own "dual jobs" regulation have been incoherent, untethered to the statutory and regulatory text, and internally inconsistent.   The difficulty arose when an enterprising individual tried to apply the dual jobs framework to a single job, essentially making the argument that some of the tasks an employee in a tipped occupation performs are really the work of a different, non-tipped occupation.

### A.   The 1980 Opinion Letter

In 1980, in response to a request for guidance, the DOL's Wage and Hour Division issued an opinion letter addressing whether certain tasks that a server in a restaurant performs after closing time still qualify for the tip credit.   That letter states, in pertinent part:

> You state the tipped employees clean the salad bar, place the condiment crocks in the cooler, clean and stock the waitress station, clean and reset the tables (including filling cheese, salt and pepper shakers) and vacuum the dining room carpet, after the restaurant is closed . . . .

> As you know, Section 531.56(e) of 29 CFR Part 531, deals with tipped employees who are performing dual jobs.   This section explains that a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses is not employed in two occupations.   Further, such related duties in an occupation that is a tipped occupation need not by themselves be directed

toward producing tips. As indicated, however, *where there is a clear dividing line between the types of duties performed by a tipped employee, such as between maintenance duties and waitress duties*, no tip credit may be taken for the time spent by a waitress performing maintenance duties.

*Insofar as the after-hours clean-up you describe are assigned generally to the waitress/waiter staff, we believe that such duties constitute tipped employment within the meaning of the regulation.*

U.S. Department of Labor, Wage and Hour Division, Opinion Letter WH-502, 1980 DOLWH LEXIS 1 (Mar. 28, 1980) (*emphasis added*).

Thus, where the tasks at issue are generally assigned to other tipped employees rather than just to one individual, and where the tasks are not exclusively the province of employees in a different, non-tipped occupation, the DOL endorsed treating such activities as part of the employee's tipped occupation, and thus as properly tipped employment.

### B.    The 1985 Opinion Letter

In 1985, however, the DOL took a different approach in addressing a scenario where one waitress in a restaurant was assigned "salad bar and dining room set-up" duties before the restaurant opens for the day constituting 30-40% of her working time. There, the DOL said the following:

> The legislative history of the 1974 amendments of FLSA (in particular, page 43 of Senate Report No. 930360, February 22, 1974) indicates that employees who "customarily and regularly" receive tips are waiters, waitresses, bell persons, counter persons, bus help, and service bartenders. It also indicates that janitors, dishwashers, chefs, and laundry room attendants are not tipped employees. It is our opinion that salad preparation activities are essentially the activities performed by chefs and no tip credit may be taken for the time spent in preparing vegetables for the salad bar . . . .

> [T]ip credit could be taken for non-salad bar preparatory work or after-hours clean-up if such duties are incidental to the waiter or waitress regular duties and are assigned generally to the waiter/waitress staff. However, where the facts indicate that specific employees are routinely assigned to maintenance-type work or that tipped employees spend a substantial amount of time in performing general preparation work or

> maintenance, we would not approve a tip credit for hours spent in such activities. . . .
>
> Therefore, based on the information you have provided, it is our opinion that no tip credit may be taken for the hours spent by an assigned waiter or waitress in opening responsibilities.

U.S. Department of Labor, Wage and Hour Division, Opinion Letter, 1985 DOLWH LEXIS 9 (Dec. 20, 1985).

This letter is troubling in several respects. First, it equates salad preparation with the work of a chef (a non-tipped occupation) without considering whether that work could also be performed by a counter person (an individual who cooks food in the presence of customers, a tipped occupation). Second, it cuts from whole cloth a quantitative limit on the amount of time an employee in a tipped occupation may spend on certain tasks that the DOL had previously determined fall within the tipped occupation, indicating that "substantial" amounts of time on such tasks would defeat a tip credit. More fundamentally, the letter errs in starting down this analytical rabbit hole in the first place by entertaining a willingness to slice and dice an erstwhile tipped occupation into tipped and non-tipped component tasks.

## C.    The 1988 Revision To The Field Operations Handbook

Following on the heels of the 1985 opinion letter, the Wage and Hour Division inserted the following language into Section 30d00(e) of its Field Operations Handbook:

> Reg. 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though the duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory or closing activities). For example, a waiter/waitress, who spends some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers. However, where the facts indicate that specific employees are routinely assigned to maintenance, *or that tipped employees spend a substantial amount of time*

*(in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties.*

Exhibit 1, U.S. Department of Labor, Wage and Hour Division, FIELD OPERATIONS HANDBOOK § 30d00(3) (Dec. 9, 1988) (*emphasis added*).

The Handbook thereby purports to shift the focus of the analysis from the occupation to the duties.  In so doing, the DOL invented an opaque requirement that duties be "incidental to the regular duties" of the tipped employee in order for the tip credit to be available.  Moreover, the DOL imposed a twenty percent limitation on "general preparation work or maintenance" activities, regardless of whether those activities are a normal aspect of the tipped occupation.

Thus, the Handbook forces the square peg of restaurant employment, where duties in occupations overlap and employees perform many different types of duties throughout a shift, through the round hole of the "dual jobs" framework designed for people performing two or more entirely distinct, non-overlapping jobs.  This results in a standard bearing no reasonable relationship to the text or purpose of the FLSA.

**D.    In A 2009 Opinion Letter, The DOL Completely Rewrote Its Approach To The Dual Jobs Issue.**

In 2009, the DOL once again opined on this topic, addressing among other things some of the confusion that had arisen as courts grappled with the dual jobs regulation and Section 30d00(e) of the Handbook.  In this opinion letter, the DOL specifically stated that it "agree[d] that the current FOH [Field Operations Handbook] sections addressing the tip credit have resulted in some confusion and inconsistent application and, as a result, may require clarification."  The DOL then fundamentally rewrote its entire approach to dual jobs in the Opinion letter, and rejected its previous "20% rule":

> *We do not intend to place a limitation on the amount of duties related to a tip-producing occupation that may be performed, so long as they are performed contemporaneously with direct customer-service duties* and all

9

other requirements of the Act are met. . . .   Accordingly, we believe that
the determination that a particular duty is part of a tipped occupation
should be made based on the following principles:

• Duties listed as core or supplemental for the appropriate tip-producing
occupation in the Tasks section of the Details report in the Occupational
Information Network (O*NET) http://online.onetcenter.org or 29 C.F.R. §
531.56(e) shall be considered directly related to the tip-producing duties of
that occupation. *No limitation shall be placed on the amount of these
duties that may be performed, whether or not they involve direct customer
service, as long as they are performed contemporaneously with the duties
involving direct service to customers of for a reasonable time immediately
before or after performing such direct-service duties*.

• Employers may not take a tip credit for time spent performing any
tasks not contained in the O*NET task list.   We note, however, that some
of the time spent by a tipped employee performing tasks that are not listed
in O*NET may be subject to the de minimis rule contained in Wage and
Hour's general FLSA regulations at 29 C.F.R. § 785.47.

These principles supersede our statements in FOH § 30d00(e).   A revised
FOH statement will be forthcoming.

U.S. Department of Labor, Wage and Hour Division, Opinion Letter FLSA2009-23, 2009

DOLWH LEXIS 27 (Jan. 16, 2009).   The tasks listed in the O*NET tasks list for waiters and

waitresses include many of the duties that Plaintiffs are alleging are "non-tipped" duties,

including cooking food, cleaning facilities and equipment, preparing foods for cooking or

serving, stocking serving stations with food or supplies, arranging tables and dining areas, and

collecting dirty dishes.

This guidance fundamentally rewrote the DOL's entire approach to dual jobs.  To make

matters even more confusing for employers trying to figure out what the law requires for

compliance, the DOL then "withdrew" this opinion letter less than two months later, in

connection with a change in administration.  *See* 2009 DOLWH LEXIS 27 (Mar. 2, 2009).  In

doing so, the DOL noted that the 2009 letter "may not be relied upon as a statement of agency

policy," but did not indicate whether the agency now views the substance of the letter as correct or incorrect.

Most pertinent to this Motion, by engaging in such a chaotic approach to construing the dual jobs regulation, the DOL has clearly forfeited any measure of deference by the courts on its interpretation of the regulation and its creation of both the "20% rule" and the idea that employees in a tipped occupation (and no *other* occupation) must have their daily activities scrutinized task-by-task to determine whether the tip credit can apply to specific minutes or seconds in each shift. *See, e.g., Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166-67 (2012). In the *Christopher* decision, the Supreme Court afforded no deference to the DOL's interpretation of its own regulations regarding the outside salesperson exemption because, among other things, the DOL's position had shifted over time. Similarly, here, the DOL has changed course in muddled fashion, such that none of its guidance on the dual jobs issue is entitled to deference.

## IV.   COURTS HAVE REJECTED PLAINTIFFS' "DUAL JOBS" CLAIMS.

Courts have been grappling with the DOL's inconsistent and confusing approach to the dual jobs regulation. Many courts have rejected the claims brought by Plaintiffs, including the 20% rule and their claim that *all* time spent performing "unrelated" tasks by tipped workers must be paid the minimum wage.[1] In *Pellon v. Business Representation International, Inc.*, 528 F. Supp. 2d 1306 (S.D. Fla. 2007), *aff'd*, 291 Fed. Appx. 310 (11th Cir. 2008), the plaintiffs contended that time spent performing "non-tipped" duties as a skycap (individuals who meet

---

[1]   Some courts have, however, agreed to follow the DOL's pre-2009 guidance and apply the 20% rule. For example, the Eighth Circuit in *Fast v. Applebee's International, Inc.*, 638 F.3d 872 (8th Cir. 2011), afforded the DOL's pre-2009 interpretations, particularly Section 30d00(e) of the Handbook, controlling deference under *Auer v. Robbins*, 519 U.S. 452 (1997). *See* 638 F.3d at 877-81. Additionally, in *Driver v. AppleIllinois, LLC*, 265 F.R.D. 293 (N.D. Ill. 2010), the court allowed the plaintiffs to proceed on the basis of the 20% rule in light of the *Fast* decision.

airline travelers curbside to assist them with luggage) should be compensated at the minimum wage, rather than the sub-minimum, tip credit wage rate.  The plaintiffs relied on the dual job regulation to support their claim.  The court rejected the plaintiffs' entire analysis as unworkable and inappropriate.  The court found that "[t]he duties that Plaintiffs have performed in this case are not those of another occupation, even if there is some overlap among tasks between different occupations."  528 F. Supp. 2d at 1313.  Turning to the practical problems inherent in trying to apply DOL's 20% standard from the Handbook, the court observed:

> [A] determination whether 20% (or any other amount) of a skycap's time is spent on non-tipped duties is infeasible.  In fact, several of the plaintiffs themselves have admitted that dividing their workday among the various tasks they perform is impractical or impossible.
>
> Permitting Plaintiffs to scrutinize every day minute by minute, attempt to differentiate what qualifies as tipped activity and what does not, and adjust their wage accordingly would create an exception that would threaten to swallow every rule governing (and allowing) for tip credit for employers.  First of all, ruling in that manner would present a discovery nightmare.  Of greater concern is the fact that under the reasoning proffered by Plaintiffs, nearly every person employed in a tipped occupation could claim a cause of action against his employer if the employer did not keep the employee under perpetual surveillance or require them to maintain precise time logs accounting for every minute of their shifts.  The threshold issues are also unsolvable: for instance, how far from the curb could Plaintiffs even walk before they are too far to be considered tipped employees for that period?

*Id.* at 1313-14.  The Eleventh Circuit affirmed summary judgment in favor of the employer "on the basis of the district court's well-reasoned order."  291 Fed. Appx. 310.

In *Schaefer v. P.F. Chang Bistro*, 2014 U.S. Dist. LEXIS 10544 (D. Ariz. Aug. 1, 2014), the court rejected the plaintiff's claim that P.F. Chang's violated the minimum wage provision by paying servers the sub-minimum wage rate for time spent performing non-tipped duties.  The plaintiff specifically alleged that servers spent more than 20% of their time performing non-tipped duties and that the tasks constituted an entirely different category of employment, such as maintenance and cleaning.  *Id.* at *5.  The court held that the plaintiff had failed to state a

minimum-wage claim under the FLSA because he could not show that he was paid below the minimum wage in any workweek.  *Id.* at *16-19.  Additionally, the court specifically declined to give deference to the DOL's Handbook because there was no controlling case law on the issue in the Ninth Circuit and the applicable dual jobs regulation, 29 C.F.R. §531.56(e), does not cap the amount of hours servers may perform non-tipped duties before becoming a dual employee.  *Id.* at *21 n. 6.

Finally, Judge Springmann in the Northern District of Indiana specifically rejected Plaintiffs' theory that any duties performed by a tipped employee that are unrelated or "outside" of the tipped occupation must be paid at the minimum wage rate of $7.25 per hour.  *Roberts v. Apple Sauce, Inc.*, 945 F. Supp. 2d 995 (N.D. Ind. 2013).  Once again, the plaintiff in the *Roberts* case relied on the dual jobs regulation to support her claim.  *Id.* at 1000.  Judge Springmann held that the cases cited by the plaintiff, along with the regulations and interpretive guidance, "lend no merit to the Plaintiff's proposition that duties like food preparation and general cleaning around the dining room cannot be incidental to the regular duties of a server and therefore must be compensated at minimum wage regardless of the percentage of time the employee spends on such duties or whether the duties are generally assigned to servers."  *Id.* at 1002.  Judge Springmann also noted that the DOL's Handbook actually recognizes that servers may spend some time performing "general preparation and maintenance work," such as cleaning tables, making coffee, and washing dishes, and still be in a tipped occupation (rather than a dual occupation).  *Id.*  Judge Springmann declined to rule on whether the 20% rule from the DOL's Handbook should be given deference, as that issue was not before her.  *Id.* at 1003.[2]

---

[2]    In their Complaint, Plaintiffs cite the Seventh Circuit's *Driver v. AppleIllinois, LLC* decision to support their claims.  739 F.3d 1073, 1075 (7th Cir. 2014).  The language cited by Plaintiffs from the *Driver* decision is clearly dictum as it had no bearing on the issue presented to the court for decision.  *See Weigle v. SPX Corp.*, 729 F.3d 724, 736-37 (7th Cir. 2013); *see also United States v. Elliot*, 467 F.3d 688, 690 (7th Cir. 2006) ("The language

**V.** **THIS COURT SHOULD FOLLOW *PELLON*, *ROBERTS*, AND *SCHAEFER* AND DISMISS PLAINTIFFS' MINIMUM WAGE CLAIMS REGARDING TIME SPENT PERFORMING "NON-TIPPED" DUTIES.**

There is a reason why even after thirty years of grappling with the issue, the DOL still cannot articulate a clear, workable approach to applying the dual jobs concept to single jobs in the restaurant industry: the entire inquiry itself is misplaced. Nor is this simply a partisan issue, as several of the conflicting guidance documents were issued during administrations of the same political party. The flaw is the very concept of trying to parse a single occupation into tipped and non-tipped components. That is where the endeavor departs from the FLSA.

For purposes of this Motion, even taking Plaintiffs' allegations as true that they were required to perform so-called "non-tipped" duties while they worked as servers and bartenders, Plaintiffs do not state a viable claim. The DOL's regulations themselves acknowledge that there is nothing *per se* improper about tipped employees performing these kinds of tasks. Indeed, 29 C.F.R. § 531.56(e) expressly lists "cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses," as well as "prepar[ing] . . . short orders or . . . tak[ing] a turn as a short order cook" as examples of properly tipped work.

The Complaint in no way suggests that Defendant tasked Plaintiffs with duties that are unusual or in any meaningful way different from how restaurants across the country assign work to tipped employees now and since the 1960s, when the FLSA first applied to restaurant workers. Congress was surely aware of practices in the industry when it authorized the tip credit for employees in tipped occupations.

Ultimately, Plaintiff's claim would put this Court in the position of trying to judge whether and when a server who takes thirty seconds to take a bag of trash from the dining area to

is dictum, for it did not play any role in the disposition.")  The Seventh Circuit's comments are therefore not in any way binding on this Court. *See Weigle* 29 F.3d at 737.

the kitchen somehow ceases to be a server and instead becomes a non-tipped "maintenance" worker for those thirty seconds.  It would require this Court to evaluate exactly when washing dishes crosses the line from what is expressly authorized in the regulations to where it ceases to be tipped server work and becomes non-tipped "dishwasher" work.  Likewise for evaluating occupational distinctions when a server takes 45 seconds to check whether the restroom has toilet paper, soap, and paper towels.  In the end, the practicalities of applying this rule are simply unworkable.

Restaurants have for decades employed a team-oriented approach whereby many of the tasks in the restaurant overlap various positions, such that individuals in two, three, or more job categories might perform the same task at various points in the same workweek, or in the same shift, or even at the same time.  No restaurant requires its tipped employees to clock in and out dozens or hundreds of times per day to register the transition from one type of task to another. The idea that Congress would impose such a monstrous record-keeping obligation on restaurants or their employees is ludicrous, as is the view that in enacting the tip credit provision in the FLSA Congress somehow intended to radically alter the job duties of millions of restaurant workers across the country or to put courts in the role of micro-managing every aspect of tipped employment in restaurants task-by-task.

Allowing Plaintiffs' claims to proceed invites exactly that kind of absurd result.  If Plaintiffs are allowed to proceed with this claim, then the natural consequence is that restaurants will be forced either (1) to segregate all "non-tipped duties," whatever that even means, and ensure that tipped employees never perform them; or (2) to maintain detailed records of exactly how tipped employees spend their time, task by task, in very short increments of time (often a minute or less) throughout a shift, for every single shift *and* determine whether these tasks are

"related" or "unrelated" to their duties as a server or bartender.  That is arguably the only kind of record-keeping that could plausibly provide a defense to these kinds of claims, and even there one would anticipate the common refrain in wage and hour litigation that the records are not accurate and thus that there is a fact issue for trial.

Plaintiffs' claim is thus contrary to both the letter and the spirit of the FLSA, and it should be rejected.

## VI.   PLAINTIFFS HAVE FAILED TO ALLEGE SUFFICIENT FACTS TO SUPPORT THEIR ADDITIONAL MINIMUM WAGE CLAIMS.

In addition to their "dual jobs" claims, Plaintiffs also allege that Defendants violated the minimum wage provision of the FLSA by "requiring" them to reimburse Defendants from their tips for customer walkouts and cash drawer shortages.  Compl. ¶¶ 6, 19-20, 35-36, 80-81. Plaintiffs have failed to plead sufficient facts related to these tip deduction claims.  Instead, Plaintiffs merely provide conclusory statements that they were "required" to reimburse Defendants from their tips for walkouts and cash drawer shortages.  They do not allege that they *actually* had their tips deducted in a workweek because of a customer walkout or cash drawer shortage.  Nor do Plaintiffs allege when these deductions allegedly occurred during their employment, which is essential to stating a viable FLSA claim.  Plaintiff Knox worked for Defendants from March 2009 to December 2013.  Compl. ¶ 17.  Plaintiff Bratcher worked for Defendants from September 2011 to April 2014.  Compl. ¶ 17.  Both, therefore, were employed for significant periods of time outside of the applicable two or three-year (for willful violations) statute of limitations.  *See* 29 U.S.C § 255(a).  If the alleged deductions (assuming the deductions were actually ever made) occurred before November 3, 2012, or three years before their Complaint was filed, they are barred by the statute of limitations.  Plaintiffs also fail to allege how often these alleged deductions occurred.

Because Plaintiffs' allegations regarding their tip deduction claims are mere conclusions, rather than specific factual allegations regarding when and how often these deductions occurred, they "are not entitled to the assumption of truth" and do not "plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679. Accordingly, their Complaint fails to offer sufficient factual basis to show entitlement to relief on their tip deduction claims and therefore "must be dismissed." *Twombly,* 550 U.S. at 570.

## CONCLUSION

For these reasons, each of the claims presented in the Complaint fails as a matter of law, and the Complaint should therefore be dismissed.

Respectfully submitted,

/s/ Craig W. Wiley

CRAIG W. WILEY
MELISSA K. TAFT
JACKSON LEWIS P.C.
10 West Market Street, Suite 2400
Indianapolis, Indiana  46204
Telephone: (317) 489-6930
Facsimile:  (317) 489-6931
E-mail: *Craig.Wiley@jacksonlewis.com*
         *Melissa.Taft@jacksonlewis.com*

PAUL DECAMP (*pro hac vice* motion
   forthcoming)
JACKSON LEWIS P.C.
10701 Parkridge Boulevard, Suite 300
Reston, Virginia  20191
Telephone: (703) 483-8305
Facsimile:  (703) 483-8301
E-mail: *DeCampP@jacksonlewis.com*

*Counsel for Defendants*

December 3, 2015

17

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on December 3, 2015, I caused a true and correct copy of the foregoing to be electronically filed.  Notice of this filing will be sent to counsel of record via the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Craig W. Wiley
Craig W. Wiley

4848-6771-9979, v.  1

18