UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KIMBERLEE KNOX, | ) | |
| KAYLA BRATCHER on behalf of | ) | |
| themselves and all other persons similarly | ) | |
| situated, known and unknown, | ) | |
| | ) | 1:15-cv-01738-SEB-TAB |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JONES GROUP, | ) | |
| AVON WINGS, LLC doing business as | ) | |
| BUFFALO WILD WINGS, | ) | |
| BW WINGS MANAGEMENT LLC, | ) | |
| COLDWATER WINGS, LLC, | ) | |
| COLONIAL WINGS, LLC, | ) | |
| COOL WINGS, LLC, | ) | |
| DANVILLE WINGS II, LLC, | ) | |
| GREENCASTLE WINGS, LLC, | ) | |
| MECHANICSVILLE WINGS, LLC, | ) | |
| SHELBYVILLE WINGS, LLC, and | ) | |
| VINCENNES WINGS, LLC | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This order comes on the heels of the District Judge's denial of Defendants' motion to

dismiss. [Filing No. 77.]  In light of this denial, and for reasons explained below, the Magistrate

Judge finds it is appropriate to conditionally certify and notify potential class members about this

suit.  In total, four motions currently pend before the Magistrate Judge: Plaintiffs' motion for

step-one notice [Filing No. 27], Defendants' motion to submit supplemental authority [Filing No.

75], Plaintiffs' motion to toll the statute of limitation [Filing No. 62], and Plaintiffs' motion to

compel [Filing No. 56].  Each motion is addressed below.

I.      **Background**

Plaintiffs brought this action against Defendants for allegedly violating the Fair Labor Standards Act.  In short, Plaintiffs allege that Defendants paid them an hourly tip-wage of $2.13, but required them to perform substantial amounts of non-tipped work and pay for shortages and walkouts from their tips.  Defendants filed a motion to dismiss in response to Plaintiffs' complaint.  While that motion was pending, Plaintiffs filed the present motion for step-one notice.  Plaintiffs wish to pursue this case as a collective action, and seek conditional certification to notify potential Plaintiffs about this suit and allow them to opt in.  Defendants reasonably requested that the Magistrate Judge postpone ruling on the motion for step-one notice until the District Judge ruled on Defendants' motion to dismiss.  The Magistrate Judge obliged.

After a brief delay, the District Judge denied Defendants' motion to dismiss, finding that Plaintiffs' claims are viable.  The delay was primarily to allow the District Judge an opportunity to consider the recent decision of *Schaefer v. Walker Bros. Enterprises, Inc.*, ___ F.3d ___, 2016 WL 3874171, *2 (7th Cir. 2016), which recognized the Department of Labor's interpretation of the Field Operations Handbook that a tipped employee may be paid a tip-wage, unless performing dual jobs or unrelated non-tipped work more than 20 percent of the time.  [Filing No. 66.]  The *Schaefer* court found that the majority of the duties complained about, such as making coffee and cleaning tables, were related.  For time spent performing the unrelated duties, wiping burners and woodwork and dusting picture frames, the *Schaefer* court held that the tipped employees may be paid a tip-wage because their time spent on that work was "negligible," and well under 20 percent of a shift.  *Schaefer,* 2016 WL 3874171, at *3.

The District Judge noted that *Schaefer* did not clarify whether the Department of Labor's 20 percent rule for unrelated work is controlling.  [Filing No. 77, at ECF p. 16-18.]  However,

because a 20 percent threshold for unrelated work is a reasonable quantifier, the District Judge denied Defendants' motion to dismiss. The District Judge explained that unlike the plaintiffs in *Schaefer*, Plaintiffs here allege that they spend 50 percent of their time as servers and 35-40 percent of their time as bartenders, performing unrelated non-tipped work while earning a tip-wage.

The District Judge's denial indicates that the pleadings sufficiently allege a violation of FLSA because the alleged time spent on unrelated non-tipped work is more than negligible and above the 20 percent threshold. With this decision in hand, the Magistrate Judge turns to whether conditional certification for step-one notice is appropriate.

## II.  Step-one notice

Plaintiffs ask the Court to conditionally certify their class and authorize Plaintiffs' counsel to notify them about this action. Plaintiffs' proposed class is comprised of "current and former employees of Defendants' Buffalo Wild Wings restaurants who were paid sub-minimum wages in the last three years." [1] [Filing No. 27.] Plaintiffs argue these individuals are "similarly situated," and submit a proposed notice for Court approval. [Filing No. 28-10.] Defendants argue that Plaintiffs' proposed class is not similar enough to warrant conditional certification. Alternatively, Defendants argue that the proposed notice should be rejected and access should be limited so that participation is not encouraged. As explained below, conditional certification is appropriate and the step-one notice is approved with one addition.

_____

[1] Plaintiffs' brief refers to "servers and bartenders" and "employees" interchangeably. Plaintiffs' supporting facts do not allege Defendants paid a tip-wage to any employees other than servers and bartenders. [Filing No. 28, at ECF p. 3-12.] Plaintiffs' proposed notice identifies its recipients as servers and bartenders. [Filing No. 28-10.] Thus, for purposes here, the Court views the term "employees" to mean the individuals holding the positions of servers and bartenders. For the sake of clarity and consistency, this order specifically uses the term "servers and bartenders."

### A.    Similarly situated individuals

Plaintiffs moved pursuant to section 16(b) of the FLSA to conditionally certify this suit as a collective action and to authorize class notice.  Section 16(b) permits a collective action against an employer for unpaid minimum wages "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b) (2012); *see Alvarez v. City of Chicago,* 605 F.3d 445, 448 (7th Cir. 2010) ("The [FLSA] gives employees the right to bring their FLSA claims through a 'collective action' on behalf of themselves and other 'similarly situated' employees.").  The appropriateness of conditional certification therefore rests on whether Plaintiffs are "similarly situated" to their proposed class.

Neither the FLSA nor the Seventh Circuit has set forth criteria for determining whether employees are similarly situated.  *Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010).  However, courts in this district and around the country have settled on a two-step procedure for dealing with collective actions under the FLSA.  *Id.; Carter v. Indianapolis Power & Light Co.*, No. IP-02-cv-01812-SEB-VSS, 2003 WL 23142183, *3 (S.D. Ind. 2003).  The first step allows the Court to analyze the pleadings and any affidavits to determine whether notice should be given to similarly situated individuals—a conditionally certified class.  *Carter*, 2003 WL 23142183, at *3.  The second step allows the Court to determine whether that class should be decertified or restricted because various potential class members are not in fact similarly situated.  *Id.*

At step one, the Court decides whether the proposed class is similarly situated.  The Court only requires Plaintiffs to make a minimal threshold showing that they are similarly situated to the employees on whose behalf they are seeking to pursue this claim.  *Carter,* 2003 WL 23142183, *3; *see also Frebes v. Mask Restaurants, LLC*, No. 13 C 3473, 2014 WL

1848461, at *2 (N.D. Ill. 2014) ("the 'similarly situated' standard is liberal"); *Rottman*, 735 F. Supp. 2d at 990 ("courts have interpreted the 'similarly situated' requirement leniently"); *Howard v. Securitas Security Services, USA Inc.,* No. 08 C 2746, 2009 WL 140126, at *5 (N.D. Ill. 2009) ("the court looks for no more than a 'minimal showing' of similarity").  Because the similarly situated standard is liberally applied, a step-one inquiry generally results in the conditional certification of a class.  *Rottman,* 735 F. Supp. 2d at 990.

The standard is lenient at step one because the final determination of whether collective action members are similarly situated occurs at step two.  *Carter,* 2003 WL 23142183, *3. (citing *Champneys v. Ferguson Enterprises, Inc.* 2003 WL 1562219, *4 (S.D. Ind. 2003)).  At the second step, the Court's inquiry becomes more stringent.  *Frebes*, 2014 WL 1848461, at *2. At that point, discovery has taken place and the Court is in a better position to reevaluate the class to determine whether it should "proceed to trial on a collective basis."  *Id*.

1. *Plaintiffs' showing*

Plaintiffs argue they are similarly situated to current and former servers and bartenders of Defendants' Buffalo Wild Wings restaurants who were paid a tip-wage in the last three years. As support, Plaintiffs provide eight declarations that demonstrate within the past three years, Defendants have paid servers and bartenders at their restaurants a tip-wage even when performing job duties that do not allow them to earn tips.  [Filing No. 28-1, at ECF p. 2; Filing No. 28-2, at ECF p. 2-3; Filing No. 28-3, at ECF p. 2; Filing No. 28-4, at ECF p. 2; Filing No. 28-5, at ECF p. 2; Filing No. 28-6, at ECF p. 2; Filing No. 28-7, at ECF p. 2; Filing No. 28-8, at ECF p. 2.]  One declaration provides copies of checklists containing additional duties allegedly enforced by management, requiring servers and bartenders to perform non-tipped duties.  [Filing No. 28-5, at ECF p. 8-17.]  Declarants estimate that they spend 30 to 60 percent of their time

performing non-tipped work.  [Filing No. 28-1, at ECF p. 7 (50%; 35-40%); Filing No. 28-2, at ECF p. 7 (50%; 40%); Filing No. 28-3, at ECF p. 6 (50%); Filing No. 28-4, at ECF p. 5 (50%); Filing No. 28-5, at ECF p. 6 (40%); Filing No. 28-6, at ECF p. 6 (50-60%); Filing No. 28-7, at ECF p. 6 (30-35%); Filing No. 28-8, at ECF p. 6 (40-50%).]  Declarants also allege that servers and bartenders are required to reimburse restaurants from their tips for customer walkouts and cash drawer shortages.  [Filing No. 28-1, at ECF p. 7; Filing No. 28-2, at ECF p. 7; Filing No. 28-3, at ECF p. 6; Filing No. 28-4, at ECF p. 6 Filing No. 28-5, at ECF p. 6; Filing No. 28-6, at ECF p. 6; Filing No. 28-7, at ECF p. 6; Filing No. 28-8, at ECF p. 6.]

Plaintiffs' complaint essentially makes the same allegation: that Defendants pay servers and bartenders a tip-wage "even when it requires those employees to perform non-tipped work that is unrelated to their tipped occupation."  [Filing No. 1, at ECF p. 3.]  The complaint also alleges that Defendants require servers and bartenders to pay Defendants "from their tips for customer walkouts and cash drawer shortages."  Id.  In the complaint, Plaintiffs list "sweeping, mopping, vacuuming, and deck brushing restaurant floors; washing glasses, cups, platters, or silverware; slicing fruit; portioning dressings; cleaning the restaurant; and rolling silverware" as the unrelated non-tipped duties.  Id.  Furthermore, the complaint alleges that tipped employees must "perform [related] non-tipped work for more than 20 percent of their time worked each workweek."  Id.  The complaint also alleges the enforcement of laminated checklists of non-tipped duties servers and bartenders are required to perform.  Id. at 14.

Importantly, Plaintiffs' complaint alleges that Defendants train all new managers at their Avon restaurant before assigning them to other restaurants.  [Filing No. 1, at ECF p. 14.]  Plaintiffs allege that with this uniform training, all servers and bartenders at all of Defendants' restaurants are required to perform the same non-tipped work.  Id.  Declarants make parallel

allegations—that other servers and bartenders experience the same treatment at Defendants' other Buffalo Wild Wings restaurants.  [Filing No. 28-1, at ECF p. 7; Filing No. 28-2, at ECF p. 7; Filing No. 28-3, at ECF p. 6; Filing No. 28-4, at ECF p. 6; Filing No. 28-5, at ECF p. 6.; Filing No. 28-6, at ECF p. 6; Filing No. 28-7, at ECF p. 6; Filing No. 28-8, at ECF p. 6.] According to the declarants, servers and bartenders earn a tip-wage and are required to vacuum and mop restaurant floors, clean bathrooms, clean windows, wash walls and baseboards, dust televisions, carry trash bags to the dumpster, sift through trash for silverware, slice fruit and vegetables, and wash silverware, platters, trays, and cups.  [Filing No. 28-1, at ECF p. 4-6; Filing No. 28-2, at ECF p. 4-6; Filing No. 28-3, at ECF p. 4-6; Filing No. 28-4, at ECF p. 4-5; Filing No. 28-5, at ECF p. 5-6.; Filing No. 28-6, at ECF p. 4-5; Filing No. 28-7, at ECF p. 3-4; Filing No. 28-8, at ECF p. 4.]

Based on the declarations and the complaint, Plaintiffs demonstrate they are similarly situated to the servers and bartenders at Defendants' restaurants, on whose behalf they seek to pursue this action.  Plaintiffs make a modest factual showing that current and former servers and bartenders of Defendants' Buffalo Wild Wings restaurants were paid a tip-wage while performing non-tipped work in the last three years.  Eight former servers and bartenders, who worked at six of Defendants' restaurants in three states, submitted sworn declarations alleging the same FLSA violations, which track the same and similar non-tipped duties alleged in the complaint.  Enough similarities alleged in the complaint and declarations exist that the Court finds Plaintiffs are similarly situated to servers and bartenders that worked at Defendants' restaurants in the past three years.  Accordingly, the Court conditionally certifies these similarly situated individuals as a class of potential Plaintiffs to receive step-one notice.

####### 2.   *Defendants' policy*

Defendants contend that just because these tipped employees allege they spend more than 20 percent of their time engaged in unrelated work does not mean Defendants have a uniform policy that requires it.  Defendants submit additional declarations and point out that one server estimates that all servers and bartenders spend less than 20 percent of their time on such duties. [Filing No. 45-5, at ECF p. 20.]  Specifically, she states: "While I do not generally track how much time I spend on my various duties which are unrelated to serving guests, I would estimate that I spend less than 20% of my time on duties.  In my personal experience, the same also applies to all the bartenders and servers." *Id*.  Defendants argue this demonstrates that Plaintiffs are not subject to a policy of performing non-tipped work more than 20 percent of their time. However, this declarant's assertion does not fly in the face of Plaintiffs' assertions because it still reflects a policy of requiring tipped employees to perform non-tipped work.  Like Plaintiffs, this declarant alleges that she earns an hourly tip-wage.  *Id*. at 18.  Even though she does not generally keep track of time, the declarant estimates spending 90 minutes doing opening duties, 15 minutes doing pre-guest duties, 30 minutes during shifts, and 30 to 60 minutes doing closing duties.  *Id*. at 19-20.  Like Plaintiffs' declarants, she describes some of this work as cutting fruit, filling condiments, wiping tables, filling ice bins, carrying dishes, rolling silverware, and sweeping the floor.  *Id*. at 19.  Depending on the day, she alleges that she performs these duties faster or slower.  *Id*. at 20.  Ultimately, when compared to Plaintiffs' declarants, this declarant does not appear dissimilar—aside from her estimated percentage.

It is difficult to imagine Defendants would maintain an express policy that requires all servers and bartenders to spend more than 20 percent of their time on non-tipped work.  For now, how much time servers and bartenders actually spend completing non-tipped work is far from

being answered.  It is reasonable to believe that some days, servers and bartenders spend less time on non-tipped work than others.  But these issues go to the heart of the case, which is why step one is so lenient.  At this point, the facts are still developing and discovery has yet to begin. Defendants' evidence demonstrates that not all servers and bartenders have identical experiences, but Plaintiffs' have shown that many had similar experiences, spending more than 20 percent of their time performing non-tipped work.

Once potential Plaintiffs opt in and the Court moves on to step two, this issue can be revisited and the amount of time employees spend and are required to spend on non-tipped work can be more closely examined.  At step one, however, the Court does not need to resolve such issues to decide that these servers and bartenders are similarly situated and conditional certification is appropriate.  Despite the different time estimate, Defendants' declarant is similarly situated to Plaintiffs.  Therefore, this argument does not prevail.

        *3.      Individualized determinations*

Defendants contend Plaintiffs are not similarly situated because the liability analysis needs to be individualized.  Defendants argue that the type and amount of non-tipped work varies by shift and is based on the employee's efficiency.  Defendants point to the wide margin of 30 to 60 percent of estimated time Plaintiffs' declarants spend performing non-tipped work. Defendants also point to the sporadic nature of the tip reimbursements.  Defendants contend that this case is not suitable for class certification because each potential class member requires substantial individualized inquiries.

Yet, even if the percentages vary, Plaintiffs do not have to show they are identically situated—only similarly situated. *Jirak v. Abbott Laboratories, Inc.,* 566 F. Supp. 2d 845, 848-49 (N.D. Ill. 2008).  Plaintiffs' declarations demonstrate that they spend over 20 percent of their

time performing non-tipped work.  Defendants do not dispute that non-tipped work occurs, only arguing that the wide margins of time it takes to complete the non-tipped work is unsuitable for a collective action.  Defendants point out that judicial economy is one purpose of a collective action and taking time to make independent liability analyses goes against this purpose.  But Defendants turn this purpose on its head.  The Court will not deny Plaintiffs the opportunity to develop a potential class of similarly situated plaintiffs for the sake of judicial economy.  In fact, the purpose of proceeding with collective actions in two steps is to initially cast a calculatedly wide net, and then offer an opportunity to refine the group if needed.

At this stage, the Court does not need to resolve the varying time estimates.  The Court only must determine, using step one's lenient standard, whether potential Plaintiffs similarly performed more than 20 percent of their time performing non-tipped duties while earning a tip-wage.  The likelihood that individual assessments will be needed at step two does not undermine the threshold showing made by Plaintiffs at step one.  Defendants' argument therefore fails.[2]

   4.    *Tip reimbursements*

Defendants also contend that Plaintiffs are not similarly situated because alleged tip reimbursements were infrequent.  However, being similarly situated to the other servers and bartenders does not hinge on making routine tip reimbursements.  This class is centered on Defendants requiring servers and bartenders to perform substantial non-tipped duties while earning a tip wage.  The alleged tip reimbursement policy of Defendants certainly plays a role in this case.  However, Plaintiffs' declarations and complaint establish that this class is unified by

---

[2] Defendants also rely on the reasoning applied to class certification under Rule 23, *Peruta v. Outback Steakhouse of Florida, Inc.*, 50 Conn. Supp. 51 (Conn. 2006), and the heightened standard for step-one notice utilized in another circuit, *Ide v. Neighborhood Restaurant Partners, LLC,* 32 F. Supp. 3d 1285, 1294 (N.D. Ga. 2014).  These standards are more stringent than what is required here and the Court does not apply them.

both personally making tip reimbursements, and by witnessing tip reimbursements, at the direction of Defendants.  Although Defendants submit opposing declarations from employees that have never made a tip reimbursement, it does not undermine Plaintiffs' demonstration that some servers and bartenders have been subject to it.  Plaintiffs have made the minimal threshold showing for step one and Defendants' evidence does not undermine this showing.

On August 11, 2016, Defendants filed a motion to submit *Langlands v. JK & T Wings, Inc.*, No. 15-13551, 2016 U.S. Dist. LEXIS 100126, *8 (E.D. Mich. 2016), as supplemental authority on the issue of whether Plaintiffs made a sufficient factual showing for step-one notice that potential class members are victims of a "common policy or plan" that violates FLSA.[3]  The *Langlands* court found that plaintiffs failed to make a minimal factual showing that they were required to perform side work for more than 20 percent of their shifts.  *Id.* at *7.  In making this finding, the *Langlands* court relied heavily on declarations submitted by defendants.  *Id.*  Here, Defendants ask the Court to similarly rely on their declarations to deny Plaintiffs' motion for step one notice.

However, there are key differences between *Langlands* and the case at hand.  Primarily, the *Langlands* court held that plaintiffs failed to make the threshold factual showing that conditional certification and notice was appropriate.  The *Langlands* plaintiffs only submitted two declarations, one of which was so devoid of detail that the court found "there is only essentially one declaration."  *Id.* at *10.  The *Langlands* court held that plaintiffs failed to demonstrate that potential class members were victims of a "common policy or plan" that violates FLSA because their "two declarations fail to provide sufficient factual support for the

---

[3] Defendants' motion [Filing No. 75] is granted, however additional briefing on the *Langlands* case is unnecessary.

allegation that these tasks cross an illegal threshold." *Id.* at *8-9. The *Langlands* court relied on defendants' 50 declarations because plaintiffs' failed to allege facts, such as their job duties, and only made conclusory legal allegations that defendants violated the FLSA—in 30 restaurants. *Id at *9*.

The case at hand is distinguishable from *Langlands* because Plaintiffs' declarations are superior in quantity and quality. Unlike the *Langlands* plaintiffs, Plaintiffs here submit eight declarations of servers and bartenders from six restaurants in three states. These declarations suggest that performing non-tipped work for more than 20 percent of a shift is a common policy or plan across all of Defendants' restaurants. Unlike the *Langlands* plaintiffs' threadbare legal allegations, Plaintiffs here detail each server and bartender's personal experience performing non-tipped work and allege that Defendants violated FLSA by estimating the percentage of time (between 30 and 60 percent) spent on that non-tipped work. As previously explained, Plaintiffs here meet the threshold factual showing required for step-one notice. While *Langlands* touches on the issue of whether Plaintiffs made a sufficient factual showing, it does not support Defendants' position.

Overall, Defendants' arguments are better suited for step two, which allows the Court to reach the merits and decide whether to decertify potential class members that are not similarly situated. *See Alvarez*, 605 F.3d at 449-50 (explaining that collective actions may be decertified at step two if the court finds that alleged similarly situated individuals actually represent separate classes or individual claims). At step one, the Court does not need to resolve issues of actual time requirements, individualized liability, or frequency of tip reimbursement to decide conditional certification is appropriate. Even if potential Plaintiffs' claims vary based on factors

such as efficiency and the time and day of their shift, they are still united by performing non-tipped work for Defendants' restaurants while earning a tip-wage.

Courts within the Seventh Circuit have authorized step-one notice under Section 16(b) of the FLSA when presented with evidence that tipped employees perform non-tipped work.  *See e.g., Johnson v. Pinstripes, Inc.*, Case No. 12-CV-1018, 2013 WL 5408657, *2 (N.D. Ill. 2013) ("The common question of whether employees still engaged in 'tipped' labor through required side work is therefore common to the entire class.").  Plaintiffs have presented this evidence. Plaintiffs' factual showing is neither erroneous nor unsatisfactory.  Thus, conditional certification for individuals similarly situated to Plaintiffs is appropriate, and they should receive step-one notice.

### B.       Plaintiffs' proposed notice

The Court next turns to Defendants' argument that the Court should reject several aspects of Plaintiffs' proposed notice.  [Filing No. 28-10.]  Defendants contend that the notice should not be sent by email, Plaintiffs should not be allowed to utilize a public website, Plaintiffs should not be allowed to send a reminder notice, and that two explanations in the notice should be added.

The Court has discretion to authorize notice to similarly situated employees.  *Alvarez,* 605 F.3d at 449; *Carter*, 2003 WL 23142183, at *2 (citing *Hoffman–La Roche, Inc. v. Sperling,* 493 U.S. 165, 169 (1989)).  "Because non-party plaintiffs must opt into a collective action, the efficiencies enabled by such actions can only be realized if 'employees receiv[e] accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'"  *Petersen v. Marsh USA, Inc.*, No. 10 C 1506, 2010 WL 5423734, *6 (N.D. Ill. 2010) (quoting *Hoffman,* 493 U.S. at 170).  In effect, the Court takes on a

managerial role, but must take care to avoid the appearance of judicial endorsement of the merits of the action. *Id.*

    1.    *Email*

Defendants object to Plaintiffs sending notice by email unless a notice sent by U.S. mail is returned as undeliverable. Defendants point to *Espenscheid v. DirectSat USA, LLC*, No. 09-CV-625-BBC, 2010 U.S. Dist. LEXIS 55578, *40-41 (W.D. Wis. 2010), which ordered plaintiffs to not send notice by email. The *Espenscheid* court explained that it employed caution when authorizing email notification "because of the potential for recipients to modify and re-distribute email messages." *Id.* at *41. However, Defendants do not use the *Espenscheid* line of reasoning. Defendants argue that email is redundant, unnecessary, and that Plaintiffs do not seem to have trouble notifying potential members, since several have already opted in. [Filing No. 45, at ECF p. 31.] This rationale for restricting email notice is unsupported by Defendants' case. In fact, the *Espenscheid* court discussed that "email notification may be necessary to reach potential class members." *Espenscheid,* 2010 U.S. Dist. LEXIS 55578, at *41.

More recently, courts recognize that "nowadays, communication through email is the norm." *Watson v. Jimmy John's, LLC*, No. 15-C-6010, 2016 WL 106333, *1 (N.D. Ill. 2016). Moreover, Plaintiffs point out that some potential class members have already relocated. [Filing No. 47, at ECF p. 15.] Relocation makes it likely that a large number of notices sent by U.S. mail will be returned, in which case Defendants agree that email is appropriate. Defendants do not convince the Court that email is unnecessary in this case. Rather, as Plaintiffs contend, email is appropriate in this case because Plaintiffs seek to issue notice to a mobile group of servers and bartenders that are more likely to receive and respond to email than U.S. mail. Thus, Plaintiffs may send the notice by email.

*2. Website*

Defendants object to Plaintiffs posting a publicly accessible website, arguing it could collect misleading commentary and individuals not in the potential class could opt in. The Court notes that Defendants' contentions rest primarily on suspicion; they offer no authority to support their objections, nor any facts to support the merits.

As with email, communication through websites is common. *E.g., Howard v. Securitas Sec. Servs., USA Inc.*, 630 F. Supp. 2d 905, 908 (N.D. Ill. 2009). Although Plaintiffs do not note any risks, Plaintiffs offer to include safety precautions in the website. Plaintiffs propose that "[t]he case website can include a simple security mechanism to prevent individuals from viewing the website or submitting a consent form without first entering a unique identifying number that may be included on the consent form, and which may only be used once." [Filing No. 47, at ECF p. 16.] Plaintiffs' offer is generous, but their proposed safety precautions are unnecessary. Opening a public website improves access to consent forms, and the Court is unaware of any actual (or anecdotal) evidence that a case website with misleading comments circulates, resulting in artificially increased case participation. On the other hand, requiring access codes runs counter to improving accessibility and is likely to limit a potential Plaintiff's ability to electronically submit a consent form. Ultimately, Defendants' objection to Plaintiffs' website lacks support. Accordingly, Plaintiffs may establish a public case website.[4]

*3. Reminder notice*

Defendants object to Plaintiffs sending reminder notices 30 days before the opt-in deadline because it may pressure individuals to consent. Plaintiffs contend that a reminder notice merely acknowledges that people lead busy lives and may forget about returning consent

---

[4] If complications do develop with this website, the Court can revisit this issue.

forms with a seemingly distant deadline.  Seventh Circuit case law discusses this issue and demonstrates the wide discretion used by courts.  In *Swarthout v. Ryla Teleservices, Inc.*, No. 4-11-CV-21-RM, 2011 U.S. Dist. LEXIS 142408, *15 (N.D. Ind. 2011), the court approved sending potential class members one reminder notice, finding it was not inappropriate or excessive.  In *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 753 (N.D. Ill. 2010), the court denied the request to send a reminder notice, finding it was unnecessary and potential encouragement to join the lawsuit.

The purpose of a step-one notice is to inform potential class members of their rights. Plaintiffs' proposed notice states, "[t]his notice is about a lawsuit that you may choose to join." [Filing No. 28-10.]  The notice is just as easily ignored as it is read.  Regardless how many times potential class members receive this information, it is their responsibility to act as they see fit and it is their decision to join or not join.  The Court is unconvinced that any harm will result from potential class members being informed of their rights twice.  Deadline reminders are commonplace and will not appear to endorse the merits of the case.  Therefore, Plaintiffs' request to send a reminder notice is approved.

### 4.   *Explanations*

Defendants object to the explanation given under the "What happens if I join the lawsuit?" section of the notice.  Defendants argue it should explain that a class member may be subject to certain obligations, such as responding to discovery, giving depositions, and testifying at trial.  As proposed, this section reads:

> **What happens if I join the lawsuit?**
> If you join this lawsuit, you will be bound by its outcome.  This means that if the servers and bartenders win the lawsuit or obtain a settlement, you may receive a payment.  If the servers and bartenders lose the lawsuit, you will not receive any money.

[Filing No. 28-10, at ECF p. 3.]  Plaintiffs contend that adding language about discovery is unnecessary and could discourage participation.  However, the additional obligations pointed out by Defendants are not incorrect or a remote possibility.  A class member could in fact be deposed or called as a witness at trial and be required to attend.  Courts typically approve notices explaining that in addition to a potential monetary reward, opt-in plaintiffs face the possibility that they will be required to participate in discovery and testify at trial.  *E.g., Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015); *Fields v. Bancsource, Inc.*, 2015 U.S. Dist. LEXIS 73428, *15 (N.D. Ill. 2015); *Regan v. City of Charleston*, 2014 U.S. Dist. LEXIS 96317, * 34 (D.S.C. 2014); *Petersen*, 2010 WL 5423734, at *6.  Explaining that a class member may be subject to these obligations allows them to make a fully informed decision of whether to join this suit.  Defendants' objection is reasonable and including this information is appropriate.  Thus, Plaintiffs must include a phrase in the notice that, "a class member may be subject to obligations such as responding to discovery, giving a deposition, and testifying at trial."

Defendants also object to the explanation given under the section, "Who will be my lawyers if I join the lawsuit, and how will the lawyers be paid?"  Defendants argue this section should explain that the individual could be partially responsible for Defendants' costs if Defendants prevail.  As proposed, this section reads:

> **Who will be my lawyers if I join the lawsuit, and how will the lawyers be paid?**
> ***
> The lawyers representing the servers and bartenders will only be paid if they win the lawsuit or obtain a settlement.  If either happens, the lawyers may receive their fees and costs from the Company and/or may receive part of any money awarded by the Court or obtained through a settlement.  If the servers and bartenders lose the lawsuit, you will not have to pay your lawyers.

[Filing No. 28-10, at ECF p. 3.]  Plaintiffs contend that adding language about paying Defendants' costs will frighten potential class members and reduce participation.

Again, courts within the Seventh Circuit typically exercise wide discretion on this issue, sometimes finding language about possibly paying Defendants' costs unnecessary, *Petersen*, 2010 WL 5423734, at *6, and other times requiring such language added to notices, *Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc.*, 2013 U.S. Dist. LEXIS 91617, *22 (W.D. Wis. 2013).  Plaintiffs argue that the possibility of an opt-in plaintiff being required to pay substantial defense costs is remote.  Defendants have not filed any counterclaims, nor do they indicate an intention to do so.  Potential opt-in plaintiffs are a group of individuals earning tip-wages.  As Plaintiffs note, advising them about a remote possibility of paying Defendants' costs will likely have a threatening effect that is disproportionate to the actual likelihood that a significant monetary amount will be assessed against them.  *Guzman v. VLM, Inc.*, No. 07-CV-1126-JG-RER, 2007 WL 2994278, *8 (E.D.N.Y. 2007).  Potential Plaintiffs are able to make informed decisions about whether to opt in without a statement about the possibility of paying Defendant's costs because those costs are only theoretical at this time.  Thus, Plaintiffs are not required to include an additional phrase in this section.

Plaintiffs' counsel is therefore authorized to issue notice in the manner described and with the form proposed, with the addition of language about discovery obligations.  This notice will allow potential Plaintiffs to make an informed decision about whether to participate without endorsing the merits of the case.

### C.    Certification and Notice

In conclusion, Plaintiffs' motion for step-one notice [Filing No. 27] is granted.  Plaintiffs have demonstrated that they are similarly situated to current and former servers and bartenders of

Defendants' Buffalo Wild Wings restaurants who were paid a tip-wage in the last three years. These similarly situated individuals are now a conditionally certified class and this action will proceed as a collective action.  Within 30 days, Defendants must provide Plaintiffs' counsel a list, in Microsoft Excel format, with the following information for this class: (i) name; (ii) employee identification number, (iii) last known address; (iv) last known e-mail address; (v) location of employment; (vi) position held; and (vii) dates of employment.

Plaintiffs' notice [Filing No. 28-10] is approved with the addition of a phrase that "a class member may be subject to obligations such as responding to discovery, giving a deposition, and testifying at trial" in the "What happens if I join the lawsuit?" section.  Plaintiffs' counsel is authorized to issue this notice via U.S. mail and electronic mail, create a case website containing case documents and electronic copies of the notice and consent form that will permit the return of consent forms electronically, and issue a reminder notice 30 days from the deadline for potential opt-in Plaintiffs to return their consent forms.

**III.    Tolling the statute of limitations**

Plaintiffs ask the Court to equitably toll the statute of limitations for potential Plaintiffs for approximately nine months, from the date Plaintiffs filed their motion for step-one notice, January 29, 2016, to 21 days after this order is entered, October 7, 2016.  Absent such tolling, Plaintiffs argue the FLSA claims of potential opt-ins could expire before they receive notice and have the opportunity to join this case.

Unlike class action claims, the FLSA statute of limitations runs until each opt-in plaintiff files a written consent to join the action.  29 U.S.C. § 256(b).  On November 3, 2015, Plaintiffs filed their complaint, alleging Defendants willfully violated the FLSA by paying them below minimum wage.  FLSA requires that an action to enforce this type of claim be commenced

within three years after the cause of action accrued, 29 U.S.C. § 255(a), which would be November 3, 2017.  As of today, Plaintiffs have approximately 14 months remaining for potential Plaintiffs to opt in.

"[A] party is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'"  *Knauf Insulation, Inc. v. S. Brands, Inc.*, 820 F.3d 904, 908 (7th Cir. 2016).

Plaintiffs argue the first element of diligence is satisfied because they have been concerned about the passage of time for step-one notice and its impact on the rights and claims of potential opt-ins.  Plaintiffs liken their case to *Struck v. PNC Bank N.A.*, 931 F. Supp. 2d 842, 847 (S.D. Ohio 2013), in which the court found plaintiffs were diligent because they filed the motion for conditional certification four months after commencing their FLSA action.  Plaintiffs argue that like *Struck*, diligence is met because they filed their motion less than three months after filing the complaint.  But the timing of the motion was not the reason the *Struck* court found diligence.  Rather, the statute of limitations had already run out for some potential Plaintiffs, and the parties were still arguing about the scope of the individuals to be noticed.  *Id.* at 845.  The *Struck* court tolled the statute of limitations, holding that these potential opt-in plaintiffs cannot diligently file consent forms because they will be unaware of their rights to join the case until it is too late.  *Id.* at 847-48.  Unlike *Struck*, potential Plaintiffs here have approximately 14 months remaining to opt-in before the statute of limitations runs out.  Diligence in the context of this opt-in collective action is therefore not shown.

Even if Plaintiffs could show diligence, they fail to show the second element of extraordinary circumstance.  The nine-month delay caused by the pending motion to dismiss was

not unreasonably lengthy and does not constitute an extraordinary circumstance. *See Bergman v. Kindred Healthcare*, Inc., 949 F. Supp. 2d 852, 860-61 (N.D. Ill. 2013) (finding extraordinary circumstance because the court entered its ruling after the motion was fully briefed for two years).  And contrary to Plaintiffs' assertion that courts routinely grant this type of motion, preliminary equitable tolling is not standard practice in FLSA collective actions and is generally considered an advisory opinion.  *See Miller-Basinger v. Magnolia Health Sys.*, No. 2:15-CV-00089-WTL-DKL, 2016 U.S. Dist. LEXIS 20920, *6 (S.D. Ind. 2016) ("It is premature for this Court to toll the statute of limitations for potential Plaintiffs because doing so would require the Court to issue an advisory opinion, which would impermissibly address the rights of parties not before the Court."); *Weil v. Metal Techs., Inc*., No. 2:15-CV-00016-JMS-DKL, 2015 U.S. Dist. LEXIS 135991, *5 (S.D. Ind. 2015) ("[T]he Court agrees with Metal Technologies that if it grants Plaintiffs' request to toll the statute of limitations for potential Opt-In Plaintiffs at this juncture, it would be issuing an impermissible advisory opinion.").

This is not a situation the equitable tolling doctrine is intended to remedy.  A pending motion is not an extraordinary circumstance and potential Plaintiffs have over a year to receive notice and pursue their rights.  Plaintiffs essentially ask the Court for an advisory opinion. Plaintiffs' motion [Filing No. 62] is therefore denied.

## IV.    Initial disclosures

Plaintiffs' motion to compel [Filing No. 56] asks the Court to order Defendants to produce the names, addresses, and phone numbers for the witnesses identified in their initial disclosures.  Fed. R. Civ. P. 26(a)(1)(i) requires parties to provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information."

It is undisputed that Defendants identified 40 individual witnesses by name but failed to produce their addresses or phone numbers, and identified three categories of witnesses, but failed to produce their names, addresses, or phone numbers.  [Filing No. 61, at ECF p. 5.]  Defendants' objection to producing this information is that Plaintiffs are not entitled to this information until and unless the Court conditionally certifies the action.  As this order certifies the action, Defendants' objection is mooted.

Plaintiffs' motion to compel [Filing No. 56] is granted, and Defendants must supplement their initial disclosures within 30 days by producing the names, addresses, and phone numbers for the witnesses identified in in their initial disclosures.[5]

## V.      Conclusion

Consistent with the discussion above, Plaintiffs' motion for step one notice [Filing No. 27] is granted.  Conditional certification of the proposed similarly situated class of servers and bartenders of Defendants' Buffalo Wild Wings restaurants who were paid a tip-wage in the last three years is approved.  Defendants must provide Plaintiffs' counsel a list in Microsoft Excel format with the above listed information for this class within 30 days.  The proposed notice is approved [Filing No. 28-10], but Plaintiffs must include a phrase that "a class member may be subject to obligations such as responding to discovery, giving a deposition, and testifying at trial."  Notice may be served by postal mail, email, and a case website may be created. Reminder notices may be sent 30 days before the opt-in deadline.  Plaintiffs' motion to submit supplemental authority [Filing No. 75] is granted, though it does not change the outcome.

---

[5] Defendants' response to this motion to compel was due on May 27, 2016, but was filed on May 31, 2016.  Defendants failed to file a timely response and failed to file a motion for leave to extend the time to file their response.  These failures further support granting Plaintiffs' motion to compel.

Plaintiffs' motion to toll the statute of limitations [Filing No. 62] is denied because the doctrine is not applicable to this situation.  Plaintiffs' motion to compel initial disclosures [Filing No. 56] is granted.  Defendants must supplement their initial disclosures by producing the addresses and phone numbers for the witnesses identified in in their initial disclosures, as well as the names, addresses, and phone numbers for the category witnesses within 30 days.

Date: 9/16/2016

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Paul  DeCamp
JACKSON LEWIS LLP
decampp@jacksonlewis.com

Craig W. Wiley
JACKSON LEWIS P.C. - Indianapolis
craig.wiley@jacksonlewis.com

Melissa K. Taft
JACKSON LEWIS P.C. - Indianapolis
melissa.taft@jacksonlewis.com

Jamie G. Sypulski
LAW OFFICE OF JAMIE GOLDEN SYPULSKI
jsypulski@sbcglobal.net

Douglas M. Werman
WERMAN SALAS PC
dwerman@flsalaw.com

Zachary C. Flowerree
WERMAN SALAS PC
zflowerree@flsalaw.com